Good morning, Your Honors. Eric Grant for Plaintiff Appellant Wesley Barber. It's the general and very long-standing rule that the United States is an indispensable party to any adjudication of an interest in Indian trust land, including the land at issue in this case, and that federal courts, by express congressional mandate, have exclusive jurisdiction of such actions. The issue presented in this case is whether there is an exception to that rule for individual Indians, like defendants here, who sue other individual Indians, like plaintiff here. I'm here to tell the Court that as a matter of precedent, logic, and most importantly, fundamental fairness, the answer is and must be no. There is not such an exception. Why is it fundamentally unfair not to have the United States as a party in a dispute between two individuals over what is indisputably Indian land? And the purpose of the trusteeship is to protect, I think it's sort of a way to protect the Indians from being deceived and taken advantage of by non-Indians. And it seems to apply largely in cases where Indian land is being sought to be alienated to non-Indians. Then the United States is a trustee, is an indispensable party. But it seems to me where you've got a transaction between two Indians, it's not really what is the interest of the United States, to protect one against the other, or what's the interest of the United States in being a party? Your Honor, the interest of the United States in being a party arises from sovereign immunity, and the cases going back, I think we've cited them as early as 1939, United States v. Alabama, the United States Supreme Court has made very clear that if the government claims an interest, it must be a party to the adjudication. And the reason for it But its interest is not being affected by this, is it? No, it is not, and it cannot be affected because of its sovereign immunity. But the interest that is affected and where the fairness consideration comes in is the position of the party in my client's position who is sued in a tribal court, in a state court, and even if he prevails, he will not have the benefit of that judgment because it is always open to collateral attack by the United States. It is the classic, as I said in the brief, heads I win, tails you lose, or maybe heads I win, tails we play again, and we see the outcome of that. So no matter how many times Mr. Barber was able to successfully defend his possession, his title, in tribal court, in state court, he's always open to collateral attack, and that's precisely why, for instance, Rule 19 of the Federal Rules of Civil Procedures say that in a case like that where a party is subject to inconsistent obligations, the litigation can't go forward because the absent party is indispensable. And, of course, underlying Rule 19 of the Federal Rules of Civil Procedures says that in a case like that where a party is subject to inconsistent obligations, the litigation can't go forward because the absent party is indispensable.  in good conscience whether the action should proceed among the existing parties. Well, in good equity and conscience, when the United States' interest is not even involved, they're still going to be the trust owners regardless of which Indian person owns the land. It doesn't seem to me that there's any equity or good conscience which would suggest that I shouldn't proceed with the action. There are two answers to that, Your Honor. If one is that if Mr. Barber's in an appropriate adjudication, and that's, as we say, not this case, but in an appropriate adjudication where the United States is a party, if Mr. Barber prevails, he will prevail against even the United States and its trust interests. His theory is individual aboriginal title, which gives him under decisions of the U.S. Supreme Court and this Court good title even against the United States government. So, one, the government's interest will be affected. But more importantly ---- We're not worried about that in this case. We're worried about whether if he has aboriginal title, which the Indian court suggested he did not, if he had aboriginal title, would it have any effect upon those who are trying to evict him from his land, which is under the trust of the United States? They said, hey, he doesn't have aboriginal title in the first place, and they pretty well proved that to the court. The court bought what they said. And then they said, kick him out. He doesn't have aboriginal title, and he can be ejected. And we're not dealing with the interest of the United States. We're only dealing with the interest of one Indian against another. My point, Your Honor, is that the defendants themselves assert title through the United States as trust land. But why would the United States care which one of them had title? I don't know, Your Honor. But that's not what the whole line of cases says. This is not a quiet title action. This is a dispute between two people. A quiet title action, I think, would require probably the government to be there. But this is just a dispute between two people. Maybe he should have counterclaimed for quiet title. It is a dispute about title, Your Honor, as we have ---- It's a dispute about title, but it's not a quiet title action. There's a difference. No, it's an eviction action. My client was a defendant in the tribal court. Right. But title was at issue. Ownership was put at issue. And the tribal court decided that ownership in favor of the defendants in this Federal action. I guess it's technically a beneficial ownership, correct? Because the United States is a trustee. The defendants are asserting a beneficial interest. My client is asserting an absolute interest under the doctrine of aboriginal title. So he would ---- Is it his position that the United States would not be a trustee if he were to prevail? Correct, Your Honor. Yes. He seeks to have title even as against the United States. Where did he allege that in anything? Your Honor, that was in the ---- As far as I know, he only responded to the claims against him. That was his defense, Your Honor. He didn't make any claim. He didn't file any action. He didn't suggest anything. No, Your Honor, he ---- All he did was affirmatively defend that he had such a status. Your Honor, he set up his title as a defense to the eviction action, essentially that the defendants could not evict him because he had superior title, not only possession, which he's had for decades, literally decades, but superior title under the doctrine of aboriginal title. And the tribal court proceeded to adjudicate the issue of title and ownership, and that's at pages 25 and 26 of the excerpts of record, the tribal court decision. And it's precisely that ---- Did the tribal court ever say that the United States did not have the possession of the land as the trustee? No, Your Honor, the court did not say that. Did the court ever get to that point? The tribal court ruled in favor of the defendants' asserted trust interest. And said they were the majority owners of the ground, with the United States having the beneficial interest, or having the trustee interest of the whole, that they were the majority owners and that his ancestors had not occupied the land to the exclusion of the adverse claimants, but rather had occupied it with Dr. Bob. You're absolutely right, Your Honor. And it's that precise kind of adjudication that this line of cases, unbroken from the Supreme Court, from this Court in the Imperial Granite case in 1991, said cannot be done in the absence of the United States, and by express congressional statute, Section 1346, subdivision F of Title 28, can only be done in Federal court. It can't be done in tribal court. And the question is whether there is an exception for individual Indians like the defendants here. And as argued in our brief, particularly on page 30 of our opening brief, a whole line of cases shows that this exception, whatever its provenance, is for Indian tribes only. And the tribe is not involved in this case. This is not tribal land. And so the exception should not. You're saying it's not tribal land. That's undisputed, Your Honor. I see. Well, then, if it's – okay. So then what is the basis for the United States' trusteeship? I believe, Your Honor, this was a – Of the other land, leaving this parcel aside. How did the United States get – there's 80 acres involved? Eighty acres, Your Honor, and I believe it was patented from the public domain in 1907 as a – But it's not tribal land? That isn't tribal land? To be precise, Your Honor, I should say it is not land in which a tribe claims an interest, and it is not on the reservation. Oh. It is Indian trust land. I see. Okay. Okay. I see my time has expired, Your Honor. Yes, it has. Thank you. Thank you, Your Honors. I am Dennis Chapobidia. I'm the attorney for the appellee. What the appellant has not told the court is that there is a extreme necessity of the tribal government, the Washoe tribal government, to maintain order and to protect the health and welfare of its members. It passed a law and order code under which these actions took place, and several years ago my client, Cliff Simpson, sought to evict who he believed was a squatter from his property. The case has been frustrating to him, and it can be envisioned to be somewhat like a bouncing ball or, perhaps even better, a tennis match where the ball is going back and forth. But at each and every incident to where the issue of indispensable party and the issue of the individual aboriginal right to title has been raised at tribal level, I'm saying tribal level, they have consistently lost. Now, in order to bring some, let's say, focus or to narrow the issues here, this court only need to look at the standards on review that have been enunciated in the Smith v. Salish Kootenai College case, a 2006 case, and Judge Schroeder, you're very familiar with that case, as well as other cases, the Farmers Union, Crow Tribe Indians, and others. And this court only needs to look at the standard under review which is deferential and clearly erroneous. We are looking at a tribal court system, a tribal court system that has sought to adjudicate, and I emphasize, an eviction action, not a quiet title action, an eviction action sought by Cliff Simpson. I guess he's making the argument that the reason that the government or the United States would be indispensable is because the United States might not honor the judgment if his client were to win. And, therefore, he would need to have that adjudicated. And, therefore, he's claiming an indispensable party relationship there. Judge, once again. What is your response on that? My response is this. That's sort of in the nature of a quiet title problem. Maybe not a quiet title action, but a quiet title problem, a future quiet title problem. And I guess he's saying that maybe that's what requires the United States to be a party. Judge, we take the view that this is an eviction action involving a matter of possession, exclusive possession by the title owners who the Bureau of Indian Affairs has acknowledged as being the title owners to the exclusion of anyone else in the world. And, also, we look at the terminology that distinguishes an eviction action from a quiet title action. If you look at what opposing counsel cited, which is 28 U.S.C. 1346F, that allows an individual who claims some right to an allotment to file an action and name the United States government. Congress has enacted a law that permits the United States to be sued in that instance in a quiet title action. This is not, I emphasize, not a quiet title action. It's an eviction action at tribal level. And the cases that have been cited in the briefs and argued back and forth, not only before this Court, the Eastern District Court, the judge there, as well as the tribal court have consistently held that a long line of cases allows an individual to pursue an eviction action without the presence of the United States as a party defendant or an indispensable party, and that's that. If he's right, then is it your position than anybody that no one who has a lawful claim of possession to land like this could ever get a squatter off without having the United States a party? Judge Schroeder, the point is that this has been in litigation for numerous years. Judge Schroeder is making a different point, that if you buy the other side's argument, nobody could ever get a squatter off his land without bringing a Federal lawsuit and bringing the government in. Nobody could ever get a squatter off, period, I guess. Yes. And that would be turning the large body of law and Federal regulation on its head. The area of Indian trust property is a well-regulated, very strictly confined arena of law that's covered under 25 CFR and 25 USC, and those laws pertain to Indian land. And as noted before, this property with the trustee of the United States obligated to look over and maintain properties for Indians, tribes as well as individuals, is a very, very strictly regulated and controlled arena. And in the event that a squatter comes in, sits on land for numerous years and claims a right to it, and then you move up, that squatter moves up to Federal district court without really a quiet title action, then we are opening up the proverbial floodgates to litigation in Federal courts that Congress never intended, that no one ever put in the books of United States laws, and therefore, it would be impossible to move a squatter off. Right. I think that should answer that. I have no questions. I don't think there are any further questions. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is Ratchford v.
judges: Schroeder, Smith, Walker